# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Kellie Loeb, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>Champion Petfoods USA Inc. and Champion Petfoods LP,<br><br>      Defendants. | Case No. 18-494<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Kellie Loeb ("Plaintiff"), individually and on behalf of all other similarly situated persons and entities, upon personal knowledge of facts pertaining to her and information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively, "Champion" or "Defendant"), and alleges as follows:

## INTRODUCTION

1. Champion sells a variety of premium-priced dog foods throughout the United States. Its dry dog food products ("Products") are sold under the "Orijen" and "Acana" brand names. Champion's packaging prominently states that the Products are "Biologically Appropriate" and contain "fresh, regional ingredients." Champion's packaging further represents that Orijen "features FRESH, RAW or DEHYDRATED ingredients, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." Consumers pay a premium for what Champion advertises and labels as a premium product. A 25-pound bag

of "Orijen Original Biologically Appropriate Dog Food" can cost $80 or more—up to four times the price of national brand competitors.

2. Contrary to Champion's representations regarding the Products, the Products contain excessive levels of harmful heavy metals, including arsenic, lead, cadmium, and mercury.

3. As a result of Champion's misrepresentations, Plaintiff and other putative Class members were harmed by paying for the advertised Products and receiving only an inferior and contaminated product.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Champion, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

5. Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Eastern District of Wisconsin.

## THE PARTIES

6. Kellie Loeb resides in Jefferson County, Wisconsin. She purchased Orijen dry dog food products for her two dogs on numerous occasions within the last 18 months, including Orijen Original and Orijen Senior, from various pet stores located within Waukesha County, Wisconsin. Kellie Loeb's most recent purchase was a bag of Orijen Original purchased in early March of 2018. Plaintiff purchased the Products because she believed they were healthy, quality products for her pets. Plaintiff would not have purchased the Products or would not pay as much for the Products

2

were she aware of the excessively high levels of toxic heavy metals in the Products. Plaintiff did not receive what she paid for.

7. Defendant Champion Petfoods USA Inc. is incorporated in Delaware. Champion Petfoods USA Inc.'s headquarters are in Auburn, Kentucky.

8. Defendant Champion Petfoods LP is a Canadian limited partnership with its headquarters and principal place of business located in Edmonton, Alberta, Canada. Champion Petfoods LP owns, operates, and controls Champion Petfoods USA Inc.

9. Defendant formulates, develops, manufactures, markets, and distributes dry dog food products under the brand names Orijen and Acana throughout the United States.

## FACTUAL ALLEGATIONS

10. Champion touts its products as "The World's Best Petfood." Champion produces a variety of dry dog foods under the Orijen and Acana brands and sells them throughout the United States, including within the State of Wisconsin.

11. The packaging of Orijen Original dry dog food touts the food as "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," and further describes its supposed "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs—sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free."

12. The packaging further states that Orijen "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods."

13. The packaging of Acana dry dog food contains substantially similar representations. For example, the package for one variety of Acana dry dog food states that the

3

product is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder—all delivered fresh from our region so they're loaded with goodness and taste," further boasting that all content is "from poultry, fish and eggs passed fit for human consumption."

14. Contrary to these representations, Champion's Products are not composed of high quality ingredients fit for human consumption or biologically appropriate. To the contrary, Champion's Products are contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury.

15. According to a white paper[1] published by Champion, the Products contain the following average concentrations of heavy metals:

|  | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
| --- | --- | --- | --- | --- |
| Average concentration | 890 | 230 | 90 | 20 |

16. These concentrations are excessive, dangerous, and render Champion's representations regarding the Products, including the packaging of the Products, false and misleading.

17. For example, of the 11 pounds of "fresh, raw, or dehydrated animal ingredients" in a 13-pound bag of Orijen Original, the package claims to contain 8.5 pounds of chicken, turkey, and eggs—over 77% of the "fresh, raw, or dehydrated animal ingredients."

18. Chicken, turkey, and eggs consumed by humans contain no or only negligible amounts of arsenic, lead, cadmium, and mercury:[2]

---

[1] http://www.championpetfoods.com/wp-content/themes/champion-petfoods/res/research/Champion-Petfoods-White-Paper-Heavy-Metals.pdf (last accessed March 26, 2018).
[2] This table was prepared using data from the FDA's Total Diet Study, revised April 2017, available at: https://www.fda.gov/downloads/Food/FoodScienceResearch/TotalDietStudy/UCM184301.pdf (last accessed March

|         | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
|---------|-----------------|--------------|-----------------|-----------------|
| Chicken | 3               | 0            | .3              | 0               |
| Turkey  | 6               | 0            | .1              | .1              |
| Eggs    | 0               | .4           | 0               | .1              |

19. Arsenic, lead, cadmium, and mercury are toxic to dogs. A dog experiencing lead poisoning may exhibit vomiting, diarrhea, lethargy, loss of appetite, abdominal pain, regurgitation, weakness, hysteria, seizures, and blindness.[3] A dog experiencing arsenic poisoning may exhibit vomiting, diarrhea, abdominal pain, lethargy, staggering, bright red blood in feces, loss of consciousness, and death—or more subtle symptoms from chronic exposure like poor appetite and weight loss.[4] Heavy metals tend to accumulate in dogs and other animals, so long-term exposure to even small quantities of heavy metals can cause deleterious health effects.

20. Ingredients with the heavy metal concentrations found in Champion's Products are not suitable for consumption by humans and are not of the advertised quality.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed class:

> All persons and entities who purchased a Champion dry dog food product for end use and not for resale within the State of Wisconsin on or after March 28, 2015 (the "Class").

Excluded from the Class are Defendant, including any entity in which Defendant has a controlling interest, is a subsidiary of Defendant, or which is controlled by Defendant, as well as the officers,

---

27, 2018). Data for chicken, turkey, and eggs comes from mean concentrations for TDS Food No. 240, 26, and 37, respectively.

[3] https://www.petmd.com/dog/conditions/digestive/c_dg_lead_poisoning (last accessed March 27, 2018)

[4] https://www.petmd.com/dog/conditions/digestive/c_dg_arsenic_poisoning (last accessed March 27, 2018)

directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant.

22. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions involving the same claims.

23. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, Class members number in the thousands.

24. **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves the following common questions of law or fact which predominate over any potential questions affecting only individual Class members:

   (a) Whether Champion engaged in the wrongful conduct as alleged herein;

   (b) Whether Champion misrepresented the Products to Plaintiff and the other Class members;

   (c) Whether Champion breached the express warranties it made to Plaintiff and the other Class members;

   (d) Whether Champion breached implied warranties;

   (e) Whether Plaintiff and the other Class members are entitled to actual damages; and

   (f) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution, declaratory, and injunctive relief.

25. Champion engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar

or identical misrepresentations, business practices, and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate in this action.

26. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff and all other Class members were damaged as a result of the uniform misconduct described above. Additionally, identical claims and legal theories are asserted on behalf of Plaintiff and the other Class members.

27. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff's interests are aligned with and do not conflict with the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

28. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, and other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Champion, making it impracticable for Class members to individually seek redress for Champion's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS

### Count I – Wisconsin Deceptive Trade Practices Act

29. Plaintiff adopts and realleges paragraphs 1–28 of this Class Action Complaint.

30. At all relevant times there was in effect the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 (the "DTPA").

31. Section 100.18(1), in relevant part, provides that no person or corporation, with intent to sell, distribute or increase the consumption of anything offered by it to the public, shall place before the public a statement that contains any assertion or statement of fact that is untrue, deceptive or misleading.

32. Defendant misrepresented the quality of the Products and the ingredients contained therein on its labels.

33. Defendant intended that Plaintiff and other members of the Class rely on its misrepresentations, as their reliance was crucial to Defendant being able to command a premium price for the Products.

34. As a proximate result of Defendant's misrepresentations and omissions, Plaintiff and the other members of the Class suffered direct economic loss by purchasing the Products at a premium, and unwarranted, price. Had Plaintiff and other members of the Class known the heavy metal content of the Products, they would not have bought the Products, or they would not have paid the premium price that they did.

### Count II – Unfair Methods of Competition and Trade Practices in Business

35. Plaintiff adopts and realleges paragraphs 1–28 of this Class Action Complaint.

36. ATCP 90.02(1), Wis. Admin. Code requires Defendant to label and identify its consumer commodities, including dry dog food products.

37. ATCP 90.02(3), Wis. Admin. Code prohibits such identifications from being false, deceptive, or misleading.

38. The Product's labels, which failed to disclose the Products were contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury, were false, deceptive, and misleading, insofar as they represented to consumers that the Products did not include toxic ingredients and that their ingredients were fit for human consumption.

39. After and due to seeing Defendant's false, deceptive, and misleading labeling and identification of the Products, Plaintiff reasonably believed, and Plaintiff and the Class were reasonably likely to believe, the Products were made with ingredients that were fit for human consumption and were not contaminated with excessive quantities of heavy metals.

40. Plaintiff and the Class would not have purchased the Products altogether, or would have paid much less for the Products, had they known that the Products in fact were contaminated with excessive quantities of heavy metals.

41. As a result of Defendant's false, deceptive, and misleading labeling and identification of the Products, Plaintiff and the Class suffered pecuniary loss in an amount not less than the purchase price of the Products, or a portion thereof, plus interest.

42. As Defendant's false, deceptive, and misleading labeling and identification of the Products is a violation of ATCP 90.02, Wis. Admin. Code, Plaintiff and the Class are entitled to twice the amount of their aforementioned pecuniary losses under § 100.20(5), Wis. Stats.

### Count III – Breach of Express Warranty

35. Plaintiff adopts and realleges paragraphs 1–28 of this Class Action Complaint.

36. The packaging of the Products constituted an express warranty.

37. Wis. Stat. § 402.313 provides, in pertinent part:

9

> (1) Express warranties by the seller are created as follows:
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample of model.

38. Defendant has breached this warranty in that the Products do not contain high quality healthy ingredients and instead contain excessive quantities of heavy metals. The Products are not biologically appropriate, and are not fit for human consumption.

39. Defendant is and has been aware of this defect in the Products and has chosen not to cure it.

40. Plaintiff and other Class members have been damaged by Defendant's breach of its express warranty obligations.

## Count IV – Breach of Implied Warranty

41. Plaintiff adopts and realleges paragraphs 1–28 of this Class Action Complaint.

42. Defendant, as the manufacturer, marketer, distributor, and seller of the Products, is a merchant.

43. Plaintiff and the other Class members purchased the Products that were manufactured and sold by Defendant in consumer transactions. The implied warranty of merchantability attended the sale of the Products.

44. To be merchantable, the products must be at least such as:

(a)   Pass without objection in the trade under the contract description;

(b)   In the case of fungible goods, are of fair average quality within the description;

10

(c) Are fit for the ordinary purposes for which such goods are used;

(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(e) Are adequately contained, packaged, and labeled as the agreement may require; and

(f) Conform to the promises or affirmations of fact made on the container or label if any.

45. The Products are not adequately contained, packaged and labeled because they are packaged as containing healthy, high quality ingredients, but instead contain excessive quantities of harmful heavy metals.

46. The Products do not conform to the promises and affirmations of facts made on their containers and labels because they do not consist of healthy, high quality ingredients that would be fit for human consumption as their packaging and labeling warrants.

47. The Products do not pass without objection in the trade under the contract description.

48. The Products are not of fair average quality within the description, are unfit for the ordinary purposes for which such goods are used, and are inadequately contained, packaged, and labeled.

49. Plaintiff and the other members of the Class did not receive the Products as warranted. The products they purchased were worth less than the products they were promised and expected.

50. As a result of Defendant's breach of warranty, Plaintiff and members of the Class suffered damages.

11

## Count V – Unjust Enrichment

51. Plaintiff adopts and realleges paragraphs 1–28 of this Class Action Complaint.

52. Plaintiff and other members of the Class purchased Defendant's products to their detriment because they paid a premium price expecting the goods to conform to the representations on the Products' labels that the Products contained high quality, healthy ingredients that would be fit for human consumption. Had Plaintiff and the other members of the Class known that the Products contained excessive quantities of heavy metals, they would not have paid the price they did. Plaintiff and the other members of the Class did not receive the benefit of the bargain.

53. Defendant knew of the actual ingredients of, and the percentage of heavy metals contained in, the Products. Defendant sold the Products at a premium price. Defendant is now retaining a benefit to the detriment of Class members. Allowing Defendant to retain the benefits of its inflated sales price while Plaintiff and other members of the Class have the detriment of having paid a price they would not have paid had they not been deceived by Defendant's labels, violates the fundamental principles of justice, equity, and good conscience.

## **REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter an Order:

A. Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B. Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C. Finding that Champion engaged in the unlawful conduct alleged herein;

D. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

E. Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

F. Awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses as provided by §§ 100.18(11)(b)2 and 100.20(5), Wis. Stat.; and

G. Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated:   March 28, 2018

Respectfully submitted,

/s/ Ben Barnow

**BARNOW AND ASSOCIATES, P.C.**

Ben Barnow (IL Bar 0118265)
Erich P. Schork (IL Bar 6291153)
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

**ADEMI & O'REILLY, LLP**

Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com

*Attorneys for Plaintiff and the putative Class*

13