# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KELLIE LOEB,

    Plaintiff,

v.

CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP,

    Defendants.

Case No. 18-CV-494-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiff filed this class action on March 28, 2018. (Docket #1). She alleges that she and her fellow class members purchased Defendants' dog foods because Defendants advertise them as high-quality products which contain ingredients fit for human consumption. This latter assertion is, of course, merely an advertising ploy—people are not expected to eat the dog food. Nevertheless, Plaintiff maintains that Defendants' representations of quality are false, because the dog food contains high levels of poisonous heavy metals. Defendants moved to dismiss Plaintiff's complaint on April 13, 2018, for failure to state any viable claims for relief and lack of constitutional standing on Plaintiff's part. (Docket #8). The motion is now fully briefed, and for the reasons stated below, it must be granted in part and denied in part.[1]

---

[1] Plaintiff asserts that this Court has diversity jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). (Docket #1 at 2); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 827 (7th Cir. 2018). Defendants do not challenge this claim.

2.  **STANDARD OF REVIEW**

Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and (6). FRCP 12(b)(1) allows for dismissal of actions over which the Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This includes cases in which the plaintiff lacks standing. *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 588, 590–91 (7th Cir. 2012). FRCP 12(b)(6) provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6).

In reviewing Plaintiff's complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [her] favor[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citation omitted). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak*, 810 F.3d at 480 (quotation omitted). Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of [her] claim that would entitle [her] to the relief requested." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016).

3.  **RELEVANT FACTS**

Accepting the truth of Plaintiff's well-pleaded allegations and drawing all reasonable inferences in her favor, the relevant facts are as follows. Defendants sell dog food under the Orijen and Acana brand names

throughout the United States. (Docket #1 at 3). Plaintiff has purchased Orijen repeatedly for her dogs and did so as recently as March 2018. *Id.* at 2. Both brands are far more expensive than other kinds of dog food, but Plaintiff bought Orijen in reliance on its advertised quality. *Id.* at 1–3.

The packaging for both products offers representations of their high quality. *Id.* at 3–4. Defendants claim that they provide "The World's Best Petfood." *Id.* at 3. Orijen is touted as "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," containing "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs—sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free." *Id.* Orijen further claims that it "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." *Id.* Similarly, Acana is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder—all delivered fresh from our region so they're loaded with goodness and taste." *Id.* at 4. As with Orijen, Acana is made "from poultry, fish and eggs passed fit for human consumption." *Id.*

Plaintiff asserts that, contrary to Defendants' representations, the products are not of high quality. *Id.* Rather, they contain "excessive" and "dangerous" levels of arsenic, lead, cadmium, and mercury, rendering them unfit for human consumption. *Id.* at 4–5. Plaintiff claims that these heavy metals can cause severe health problems for dogs. *Id.* at 5. Further, because "[h]eavy metals tend to accumulate in dogs and other animals, . . . long-term exposure to even small quantities of heavy metals can cause deleterious health effects." *Id.*

Plaintiff discovered the heavy metal levels in the products by reference to a white paper published by Defendants themselves (the "White Paper"). *Id.* at 4; (Docket #10). A "white paper" is a marketing tool used to promote a product or service, usually founded on some empirical data. Defendants' White Paper, essentially a four-page pamphlet, sets forth the results of some third-party studies conducted on the heavy metal levels in Orijen and Acana. *Id.* The White Paper discloses the arsenic, lead, cadmium, and mercury concentrations found in the dog foods and explains how those are well below dangerous levels. *Id.*

Plaintiff cites the FDA's "Total Diet Study," published in April 2014 and revised in April 2017, in an effort to contradict the White Paper's conclusions (the "Study"). According to the Study, poultry, fish, and eggs meant for human consumption have on average far lower levels of heavy metals than those found in Defendants' products. (Docket #1 at 4–5). This is important for Orijen and Acana because both are primarily composed of allegedly contaminated meat and eggs. *Id.* at 4.

4.  ANALYSIS

Plaintiff generally alleges that Defendants' marketing is both false and misleading, and that she and the class members acted in reliance on Defendants' representations in paying a premium for the dog food. She brings specific claims in five counts. Count One is for violation of the Wisconsin Deceptive Trade Practices Act ("WDTPA"). (Docket #1 at 8). As the name implies, the WDTPA prohibits untrue or deceptive advertisements. Wis. Stat. § 100.18(1). Count Two is nearly identical, contending that Defendants' false statements violate Wisconsin Administrative Code § ATCP 90.02, which governs consumer product packaging. (Docket #1 at 8–9). If true, this would entitle Plaintiff to damages

under the Wisconsin Unfair Trade Practices Act ("WUTPA"). Wis. Stat. § 100.20(5). Counts Three and Four are for breach of express and implied warranties. (Docket #1 at 9–11). Count Five asserts that Defendants have been unjustly enriched by their deceptive marketing scheme. *Id.* at 12.

The Court's first concern is with the material by which Defendants' motion, and Plaintiff's complaint, should be assessed. Normally, this would be only the allegations of the complaint. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). However, Defendants assert that the White Paper demonstrates the implausibility of Plaintiff's allegations, and thus the propriety of dismissing this action. *See, e.g.*, (Docket #9 at 11–15). When a defendant offers arguments in support of a motion to dismiss which go beyond the complaint's allegations, a court has two options: 1) ignore the outside materials; or 2) if it wants to consider the documents in deciding the motion, the court must convert the motion to one for summary judgment and allow the plaintiff adequate time to conduct discovery to prepare a response. Fed. R. Civ. P. 12(d).

Defendants maintain that the Court need not convert their motion to a summary judgment posture in light of an exception to FRCP 12(d)'s otherwise clear command. The Seventh Circuit has long held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The White Paper is indeed referenced by Plaintiff's complaint and, at least at this stage, appears to be central to her claims.

Defendants fail to account, however, for the final requirement of this doctrine. The document in question must be "concededly authentic" and

"prove[] that [Plaintiff's] claim ha[s] no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit *incontrovertibly contradicts* the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.") (emphasis added). Defendants, heedless of this rule, rest their position on the assumption that the White Paper not only conflicts with, but indisputably *proves* the meritlessness of Plaintiff's allegations. For example, in their opening brief, Defendants argue:

> [A]s explained in detail in the White Paper and set forth more fully below, Champion's products are anything but dangerous. In the White Paper, Champion disclosed that its products contain arsenic, cadmium, lead, and mercury, which are all from natural sources. In fact, as discussed in the White Paper, any pet food made from natural sources will have some levels of heavy metals such as arsenic, cadmium, lead, and mercury because these metals are naturally present in the environment. Given this fact, their presence alone cannot form the basis of any of Plaintiff's claims.
> . . .
> [T]he presence of these heavy metals is a small fraction of the maximum allowed for pet food. Therefore, based on third-party testing in [the White Paper], the levels of heavy metals in Champion's dog food are far below the standards set forth by the FDA and the NRC. Accordingly, even though Champion's dog food contains naturally occurring heavy metals, none of the statements identified by Loeb as being on Champion's packaging are misleading because those naturally heavy metals are well below the guidelines set forth by the FDA and NRC.

(Docket #9 at 12–13) (citations omitted).

The point of Plaintiff's lawsuit is to disagree with the conclusions reached by the White Paper, while nonetheless relying on its factual representations regarding heavy metal levels in Defendants' products.

What Defendants need to counter Plaintiff's allegations is additional evidence on what constitutes "safe" concentrations of heavy metals in dog food and what is meant by "fit for human consumption." That, of course, is not the proper subject of a motion to dismiss. *Tierney*, 304 F.3d at 738 (The *Venture* exception is narrow; "[i]t is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment.").

Defendants emphasize that Plaintiff "cannot have it both ways with the White Paper. Plaintiff cannot on the one hand utilize the White Paper for the alleged levels of heavy metals in Champion's dog food while on the other also ignore the MTLs utilized in the White Paper." (Docket #17 at 5). To the contrary, Plaintiff may use Defendants' data while simultaneously disagreeing with their analysis thereof. This is particularly true because Defendants concede that there are no FDA regulations for the subject heavy metals in dog food. *Id.* Certainly, at the appropriate stage, Plaintiff will be called upon to produce evidence of what is considered safe for dog food. Defendants will be free to submit contrary evidence. The trier of fact will decide who is right.

Moreover, the White Paper is not a document of the type normally allowed through the *Venture* exception. These include documents which are:

- Contracts or a collection of documents forming a contract in a contract dispute (*Venture*);
- Attached to or referenced by the complaint (*Tierney*); or
- Indisputably genuine, such as public records subject to judicial notice (*Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012)) and documents authored or signed by the plaintiff (*Gillis v. Meisner*, 525 F. App'x 506, 508–09 (7th Cir. 2013) (settlement agreement)).

*See also Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (magazine article which the plaintiffs alleged gave them notice of a conspiracy); *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (investment documents, such as plan descriptions and prospectuses, in an action against an ERISA fiduciary for making improper investments; also compiling other instances, including cases "upholding consideration of an agreement quoted in the complaint and central to the question whether a property interest existed" and "permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA"). Again, though the White Paper is referenced in Plaintiff's complaint, her purpose is to dispute its findings, not rely on them. She may proceed past the pleading stage and seek evidence, assuming it exists, that the White Paper's conclusions are wrong.

Defendants further suggest that the Study undermines Plaintiff's claims. (Docket #9 at 13–14). For the same reasons as the White Paper, the Court cannot consider the Study as part of the instant ruling. Further, as with the White Paper, the Study is offered as support for, not conclusive proof of, Plaintiff's allegations. Indeed, it has even less of a dispositive effect than the White Paper. The Study contains no conclusions at all which would favor either side; it is merely a reference chart.[2]

Having determined that the White Paper and the Study should be disregarded, and with the focus correctly shifted back to Plaintiff's

---

[2]Defendants also attempt to rely on a document entitled the "Target Animal Safety Review Memorandum," published by the FDA in 2011. The document is referenced in the White Paper as a source of "maximum tolerable limits" for heavy metals in dog food. It was not attached to Plaintiff's complaint nor to Defendants' motion. The Court is thus unequipped to consider it, regardless of what it says or which side it supports.

allegations, the Court can turn to Defendants' arguments for dismissal. Defendants' overarching position is that Plaintiff has not adequately alleged that its advertisements are false or deceptive, despite the concentrations of heavy metals cited in the complaint. This is presented as both a generic FRCP 12(b)(6) argument, as well as one relating to Plaintiff's standing to sue. Defendants then offer specific reasons why each individual count of the complaint should be dismissed. The Court will address Defendants' arguments in turn.

### 4.1 Plaintiff's Theory is Adequately Pleaded and Affords Her Standing to Sue

Defendants begin by asserting that Plaintiff's complaint fails to satisfy the plausibility pleading standards set forth in the Supreme Court's seminal *Twombly* and *Iqbal* decisions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This position is premised entirely on the assumption that the White Paper and the Study are properly considered in reviewing their motion, and that the conclusions in the White Paper are beyond reproach. As discussed above, that premise is mistaken. Plaintiff alleges, as she is free to do, that the White Paper is not sacrosanct.

Defendants further contend that Plaintiff's complaint needs additional factual allegations to enter the realm of plausibility. They accuse Plaintiff of failing to "define a baseline as to what would not count as 'excessive' quantities of heavy metals." (Docket #9 at 14). Defendants maintain that Plaintiff must plead the standard or metric by which the products would be considered safe for dogs or fit for human consumption. (Docket #17 at 5–7). They would also require Plaintiff's complaint to "cite to studies or facts of any kind (from the government, academic, or otherwise)" that would offer support to her allegations. *Id.* at 2.

None of this is necessary. Plaintiff pleads that Defendants' product packaging contains material misstatements upon which she and the putative class members relied on in paying a premium price for the goods. Whether these allegations are factually correct is for another time. Put differently, Defendants have not established that it is beyond doubt that Plaintiff "could prove no set of facts in support of [her] claim that would entitle [her] to the relief requested." *Enger*, 812 F.3d at 568.

Defendants' standing argument fails for similar reasons. A litigant has standing to sue in federal court only when (1) she suffered an injury in fact, (2) the injury is causally connected to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable judicial decision. *Doe v. Holcomb*, 883 F.3d 871, 975 (7th Cir. 2018) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff's allegations easily satisfy these elements. She pleads that she paid too much for unsafe dog food, that this was caused by Defendants' deceptive and false advertisements, and she seeks money damages as compensation.

Defendants' arguments to the contrary lack merit. Defendants believe that Plaintiff needs to plead a physical injury to her or her pet from consuming the contaminated food, but that is not what she seeks to redress. Rather, Plaintiff complains about paying too much for what she maintains was a low-quality product. Defendants also cite to courts which have dismissed lead contamination claims because the products in question met the FDA guidelines for acceptable lead levels. *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010); *Boysen v. Walgreen Co.*, No. C-11-06262-SI, 2012 WL 2953069, at *5–6 (N.D. Cal. July 19, 2012). These cases are inapposite. Here, the parties agree that there are no FDA regulations on heavy metal concentrations in human or dog food. *See* (Docket #15 at 8–10;

Docket #17 at 5); *Zeiger v. WellPet LLC*, 17-CV-04056-WHO, 2018 WL 452156, at *5 (N.D. Cal. Jan. 17, 2018). Instead of a blessing from the FDA, Defendants again rely on the mistaken assumption that the White Paper—which they authored—conclusively establishes the safety and quality of the products. Plaintiff pleads to the contrary.

### 4.2  Dismissal of Individual Counts

While the Court finds that Plaintiff's theory of the case is sound as pleaded, Defendants further assert that Plaintiff's individual claims should be dismissed for reasons particular to each. Some of these arguments have merit. The Court will discuss the claims in the order they have been alleged.

#### 4.2.1  Count One – WDTPA

To state a WDTPA claim, Plaintiff must allege that "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Novell v. Migliaccio*, 749 N.W.2d 544, 553 (Wis. 2008) (quotation omitted). Defendants make three arguments for dismissal of Plaintiff's WDTPA claim. First, they contend that the claim is in the nature of fraud, but it does not comply with FRCP 9(b)'s heightened pleading standard for such claims. Plaintiff does not contest the former assertion but maintains that her complaint satisfies FRCP 9(b).

FRCP 9(b) requires that allegations of fraud must state the circumstances of the fraud with "particularity." Fed. R. Civ. P. 9(b). This means alleging "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir.

2014). Plaintiff satisfies this standard. She states that she bought Defendants' dog food many times from various stores in Waukesha County. Plaintiff further alleges that the packaging prominently displayed the purported misrepresentations. She directly quotes the packaging's statements in her complaint. Defendants contend that Plaintiff does not specifically allege seeing the statements on the packaging before purchasing the products, but this is a ready implication from her other allegations. Indeed, it is a necessary one, as Plaintiff claims that she would not have bought the products had she known the statements were false.[3] In ruling on a motion to dismiss, the Court must allow this inference in Plaintiff's favor.

Next, Defendants argue that their advertisements are not actionable misrepresentations, but are instead mere puffery. Wisconsin defines puffery as "the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." *State of Wis. v. Am. TV & Appliance of Madison, Inc.*, 43 N.W.2d 709, 712 (Wis. 1988) (quotation omitted). "Commercial puffs" are excluded from the ambit of the WDTPA because "they are not capable of being substantiated or refuted." *Tietsworth v. Harley-Davidson, Inc.*, 677

---

[3] *Spacesaver Corporation v. Marvel Group, Inc.*, a case upon which Defendants heavily rely, offers an interesting discussion of WDTPA claims. 621 F. Supp. 2d 659, 662–64 (W.D. Wis. 2009). The court noted that claims pursuant to Wis. Stat. § 100.18 must be based on misrepresentations to the public. *Id.* at 663. While this does not appear to require a misrepresentation to the plaintiff specifically, courts have framed the question as whether the plaintiff is a member of the public. *Id.* Here, Plaintiff has expressly alleged misrepresentations on the products' packaging, displayed for the public to read and rely upon. Her complaint supports the implication that she is a member of the public, in that she purchased Defendants' products at various retail stores.

N.W.2d 233, 246 (Wis. 2004). Defendants' alleged misrepresentations fall on both sides of this line. Their claim of having "The World's Best Petfood" is clearly a statement of opinion. By contrast, whether the products' ingredients are "fit for human consumption" is a disputable fact. The same is true for the assertions that the products are "biologically appropriate," "minimally processed," and "fresh." While less definite than being "fit for human consumption," these other claims may also be proven or refuted with evidence.

Defendants' final contention is that Plaintiff cannot premise her WDTPA claim on omissions, namely Defendants' failure to disclose the allegedly dangerous heavy metal concentrations in its dog food. While this is technically correct, *Tietsworth*, 677 N.W.2d at 245, it is of little consequence. True, Plaintiff cannot proceed on a theory that Defendants should have labeled Orijen and Acana with a heavy metal concentrations chart. Nevertheless, she can claim that Defendants' representations of quality and fitness for human consumption are not accurate *because* of the alleged contaminants in those products. Thus, Defendants' arguments as to the WDTPA claim result in the striking of only two words from the complaint: "and omissions" from paragraph 34 of the complaint. (Docket #1 at 8).

### 4.2.2 Count Two – WUTPA

Wisconsin Administrative Code § ATCP 90.02 is entitled "[d]eclaration of product identity." Its first subsection requires sellers of consumer commodities to state the common or usual name of the commodity on its packaging. Wis. Admin. Code § ATCP 90.02(1). The second subsection describes the necessary "location and prominence" of that identification. *Id.* § ATCP 90.02(2). The final subsection provides that

"[t]he declaration of identity under sub. (1) may not be false, deceptive, or misleading." *Id.* § ATCP 90.02(3).

Plaintiff contends that Orijen and Acana violate this rule because they are labeled as "biologically appropriate dog food" when they are in fact contaminated with heavy metals. (Docket #15 at 14).[4] Defendant argues, and the Court agrees, that this is not the purpose of Section ATCP 90.02. It is meant to ensure that products are identified by their common name. Dog food must be labeled as dog food, and not cat (or human) food. This reading is bolstered by reference to the second subsection, which focuses on the styling and position of the label, not its content. "Biologically appropriate," whether or not Plaintiff disputes the statement, is not part of the "declaration of product identity" contemplated by Section ATCP 90.02. Plaintiff does not dispute that Defendants' products are indeed labeled as dog food. Count Two will be dismissed.

### 4.2.3 Count Three – Express Warranties

Defendants attack the express warranty claim on two grounds, but the first is dispositive. They assert that Plaintiff has not pleaded privity of contract between the parties. This is a requirement of an express warranty claim that extends even to ultimate purchasers of consumer goods. *St. Paul Mercury Ins. Co. v. The Viking Corp.*, 539 F.3d 623, 628 (7th Cir. 2008) ("St. Paul claims that Wisconsin law is evolving toward eliminating the privity

---

[4]This is Plaintiff's argument in her brief. The complaint states the basis for this claim as Defendants' failure "to disclose [that] the Products were contaminated with excessive quantities of heavy metals" in the products' labels, making them "false, deceptive, and misleading, insofar as they represented to consumers that the Products did not include toxic ingredients and that their ingredients were fit for human consumption." (Docket #1 at 9). Neither party takes issue with Plaintiff's recharacterization of the complaint's allegations. The Court will assume the two descriptions of the claim are synonymous.

requirement for remote purchasers of products. . . . Whether fair or not, the most recent pronouncement by the Wisconsin Supreme Court on this issue suggests that privity of contract still applies for warranty claims like the one here[.]"). Plaintiff does not contest that she lacks privity of contract with Defendants; she bought their products from various pet stores, not Defendants directly. While it may indeed seem unfair to prohibit an express warranty claim in these circumstances, this Court is in no position to disagree with the Seventh Circuit or the Wisconsin Supreme Court.

Plaintiff responds with two inapposite citations. In *Ball*, an unpublished decision from the Western District of Wisconsin, the court held in dicta that a consumer *might* be able to enforce an express warranty that was provided as part of written warranty in the product's packaging. *Ball v. Sony Elec. Inc.*, No. 05-C-307-S., 2005 WL 2406145, at *1, *5 (W.D. Wis. Sept. 28, 2005). The parties in *Midwhey*, a Wisconsin Court of Appeals decision, agreed that the manufacturer's express warranties extended to "the purchasers and end users of its equipment[.]" *Midwhey Powder Co., Inc. v. Clayton Indus.*, 460 N.W.2d 426, 428 (Wis. Ct. App. 1990). *Ball* is neither controlling nor persuasive, and the relevant issue was a matter of agreement in *Midwhey*. Neither case changes the result for Plaintiff's express warranty claim. Count Three will be dismissed.

### 4.2.4 Count Four – Implied Warranties

In her response brief, Plaintiff agreed to voluntarily dismiss her implied warranty claim. (Docket #15 at 16 n.2). Defendants did not object to this in their reply and offered no further analysis of the claim. (Docket #17 at 3 n.2). Count Four will stand dismissed.

### 4.2.5 Count Five – Unjust Enrichment

In Wisconsin, an unjust enrichment claim requires "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 904 N.W.2d 789, 798 (Wis. 2017). Plaintiff's allegations satisfy each element. She asserts that Defendant was unjustly enriched when she paid a premium price for dog food which contained unsafe levels of heavy metals. (Docket #1 at 12). Plaintiff further alleges that Defendant knew about the heavy metal concentrations and sold the products at a premium price anyway. *Id.* This was inequitable because Defendants deceived Plaintiff and the class members with false statements of quality. *Id.*

Defendants say that Plaintiff has failed to plead "adequate facts" to support these assertions. *See* (Docket #9 at 26). As discussed above, extensive factual pleading is not required. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("Ever since their adoption in 1938, the Federal Rules of Civil Procedure have required plaintiffs to plead *claims* rather than facts corresponding to the elements of a legal theory."). Plaintiff has put Defendants on notice of her claim. She does not, as Defendants suggest, need to plead specific facts regarding how the products' ingredients were rendered unfit for human consumption, or how they did not contain high quality ingredients generally, beyond the heavy metal allegations already pleaded. Defendants' belief in the quality of their products is a matter of proof not suitable for disposition on a motion to dismiss. Defendants also claim that the White Paper proves that they thought their products were safe and of good quality. Assuming the White

Paper could be considered, Plaintiff's allegations imply that it was a ruse, and that Defendants knew the conclusions stated therein were false.

5. **CONCLUSION**

The thrust of Defendants' motion is to bristle at Plaintiff's allegations and call them slander. *See* (Docket #17 at 2). Defendants' displeasure at her accusations is no basis for dismissing them, however. Although certain of Plaintiff's claims are properly dismissed, her primary theory survives.[5] This matter must be resolved by reference to evidence, not pleadings.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Docket #8) be and the same is hereby **GRANTED in part** and **DENIED in part** in accordance with the terms of this Order;

**IT IS FURTHER ORDERED** that the words "and omissions" be and the same are hereby **STRICKEN** from Paragraph 34 of Plaintiff's complaint (Docket #1 at 8); and

**IT IS FURTHER ORDERED** that Counts Two, Three, and Four of Plaintiff's complaint be and the same are hereby **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 7th day of June, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

[5] Plaintiff did not seek leave to re-plead in the event the Court dismissed some or all of her claims. *See generally* (Docket #15). The Court will not grant such relief to a represented party absent an express request.