# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KELLIE LOEB,

                Plaintiff,

v.

CHAMPION PETFOODS USA INC.
and CHAMPION PETFOODS LP,

                Defendants.

Case No. 18-CV-494-JPS

**ORDER**

### 1.    INTRODUCTION

Plaintiff, a Wisconsin consumer, asserts that Defendants, makers of pet food, deceptively marketed their dog food as having various high-quality attributes when this was not the case. Specifically, she claims that Defendants' product was contaminated with lead, arsenic, cadmium, and mercury. On that basis, she brought the instant class action which states five separate causes of action. (Docket #1). Three of the claims were dismissed in the Court's order addressing Defendants' motion to dismiss. (Docket #19) (the "Dismissal Order"). Defendants have filed a motion for summary judgment addressing the two remaining claims and seeking dismissal of the entire lawsuit. (Docket #33). For the reasons explained below, Defendants' motion must be granted.

### 2.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th

Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). Internal inconsistencies in a witness's testimony "'create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all.'" *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1170 (7th Cir. 1996) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). The non-movant "need not match the movant witness for witness, nor persuade the court that [its] case is convincing, [it] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

**3. RELEVANT FACTS**

Defendants sell many varieties of pet food. The two at issue in this case are the dog foods Orijen Original and Orijen Senior. From November 2016 through March 2018, Plaintiff purchased Orijen Original and Orijen Senior for her two dogs. She did so at various pet supply stores throughout Wisconsin. The packaging of these products included many statements about their quality and wholesomeness, including the following (capitalization is preserved):

- ORIJEN features FRESH, RAW or DEHYDRATED INGREDIENTS, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods

- FRESH REGIONAL INGREDIENTS GROWN CLOSE TO HOME – We focus on local ingredients that are ethically raised by people we know and trust, and delivered to our kitchens fresh or raw each day

- WHOLEPREY DIET

- Nourish as Nature Intended – ORIJEN mirrors the richness, freshness and variety of WholePrey meats that dogs are evolved to eat

- MADE IN OUR USA KENTUCKY KITCHENS

- INGREDIENTS WE LOVE FROM PEOPLE WE KNOW AND TRUST

- TRUSTED BY PETLOVERS EVERYWHERE, ORIJEN IS THE FULLEST EXPRESSION OF OUR BIOLOGICALLY APPROPRIATE AND FRESH REGIONAL INGREDIENTS COMMITMENT

(Docket #36-3 at 7–15).

The packaging does not specifically represent that the products are free of heavy metals. Plaintiff believes that even without this express statement, the general import of the packaging led her to believe that she was purchasing a premium, healthy, locally sourced dog food, implicitly free of harmful contaminants. Nonetheless, Defendants never intentionally added heavy metals to their products. The heavy metals found therein are naturally occurring, in that they were present in the plants and animals which were processed into the food.[1]

---

[1] Plaintiff notes that, by operation of logic, Defendants did indeed add the heavy metals to the products, just as they added every other ingredient. This is both true and irrelevant. The point is that Defendants did not, for instance, dump vats of lead into their products.

Defendants have offered evidence that the presence of heavy metals in Orijen does not make the product harmful or dangerous.[2] In 2005, the National Research Council published a study titled Mineral Tolerance of Animals (the "MTA"). The MTA describes maximum tolerable levels ("MTL") for various substances in pet food, including the heavy metals at issue here. According to third-party lab studies commissioned by Defendants, the levels of arsenic, cadmium, lead, and mercury in Defendants' products are but a fraction of the MTLs. Plaintiff questions the reliability of these studies but has not performed any such studies on her own.

Defendants assert that the MTLs are widely accepted and relied upon in determining safe levels of heavy metals in pet food. This is based primarily on the testimony of Robert Poppenga ("Poppenga"), a veterinary toxicologist hired by Defendants to offer an expert opinion in this matter. Defendants further note that the MTA's MTLs were later cited in a 2011 Food and Drug Administration document called the Target Animal Safety Review Memorandum, which assess the potential danger of heavy metals in pet food.[3] Plaintiff attempts to question the reliability of the MTLs because the MTA is old, and because the MTA itself cautions that the data on mineral toxicity in pets is incomplete, thus undermining the usefulness

---

[2]Defendants claim that Plaintiff's dogs did not suffer any adverse health consequences from eating Orijen. Plaintiff disputes this, as one of her dogs has cancer, and both have liver problems. Neither side has presented expert veterinary opinions on the matter, so the Court is unable to determine who is correct.

[3]Plaintiff suggests that the FDA's memorandum simply used the MTL figures and did not expressly adopt them, but regardless of semantics, the memorandum repeatedly relied on the MTLs to evaluate whether certain pet foods were safe. (Docket #48-7 at 4) (stating that the MTLs are appropriate for the assessment of animal diets).

of the MTLs when applied to those animals. However, she fails to offer any expert opinion to counteract that supplied by Defendants.

Plaintiff does submit other forms of contrary evidence. The FDA has published a reference chart detailing the contaminant levels in various consumer food products, entitled the Total Diet Study ("TDS"). Plaintiff relies on the TDS as a comparator between the levels of heavy metals in Defendants' products versus those in consumer-bound chicken, turkey, and eggs. She notes that the heavy metal levels in these human foods are lower than in Defendants' dog food, implying that Orijen is tainted and unfit for human consumption. Defendants stress that the TDS is merely a chart; it does not purport to establish dietary limits on heavy metals in any species—human, dog, or otherwise. In fact, it contains no conclusions of any kind. Because of this, Poppenga opines that the TDS is completely unhelpful to the determination of what levels of such contaminants are safe in food.

Plaintiff has also obtained the expert opinion of Bobby Calder ("Calder"), a scholar in the field of psychology and marketing, who states that Orijen's packaging is carefully designed to convey a belief to consumers that the product is of high quality and made from fresh ingredients which are fit for human consumption. Calder avers that the packaging's design would both consciously and unconsciously influence a reasonable consumer to purchase Orijen. Calder concludes that "[t]o the extent that the Orijen . . . failed to provide the high quality, fit for human consumption, biologically appropriate based on evolution, whole animal raw and fresh ingredients that their packaging led consumers to expect, consumers would have been misled[.]" (Docket #49-14 at 11).

Finally, Plaintiff points out a number of other quality issues with Defendants' products, including the use of expired and frozen ingredients and those labeled as unfit for human consumption, the inclusion of heavily processed animal meal and rendered fats, the addition of regrinds (the ground-up remains of prior production runs of dog food), lack of regionally sourced ingredients, but rather the use of ingredients from around the globe, the presence of contaminants like hair, bugs, bones, and plastic, and the possibility that Defendants did not actually know the origin of all of their ingredients. Defendants dispute both the truth of Plaintiff's claims and, assuming their truth, their relevance. Plaintiff's complaint rests its allegations of substandard quality on one issue: the presence of heavy metals in the products. It says nothing about any of the other quality problems Plaintiff now raises.[4]

---

[4]The only statement of fact dealing directly with heavy metals in Defendants' products is the following:

> Champion has run a handful of laboratory feeding trials wherein a small number of laboratory dogs are fed Champion foods for a period of approximately six months and monitored. Christine Caswell Dep. ("Caswell Dep.") 22:21–24:26, attached as Exhibit 9. In 2011, one of Champion's most heavily contaminated diets, ORIJEN Six Fish, failed an AAFCO feeding trial because two of the test animals were found to have elevated levels of the liver enzyme ALT. Caswell Dep. 99:6–100:5. Rather than take any measures to determine the cause of the failure (which in all likelihood was the astronomical levels of heavy metals contained in the diet), Champion decided to attempt the trial again and never determined the cause of the failure. Caswell Dep. 100:6–13. This is part of a dangerous and unscientific practice at Champion: when a test shows an undesirable outcome, retest until the outcome is good then stop[.]

(Docket #56 at 17–18). There are two problems with this statement, however, that make it useless for purposes of this case. First, the testing was done for Orijen Six Fish, not the products Plaintiff purchased, Orijen Original and Senior. Second, and

## 4. ANALYSIS

As noted above, the theme of this lawsuit is that while Orijen's packaging touts a healthy, fresh, regionally sourced product, containing ingredients which are biologically appropriate and fit for human consumption, the heavy metals found within it render these assertions untrue. (Docket #1 at 3–5).[5] Both of Plaintiff's claims which have survived to this stage of the case are based on this theme. The first claim (Count I of the complaint) asserts that Defendants have violated the Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. § 100.18, by misrepresenting Orijen's quality, thereby inducing consumers to purchase the product at a premium price, when they either would not have paid that price or purchased the product at all. Similarly, the second claim (Count V of the complaint) contends that Defendants have been unjustly enriched by selling dog food at an inflated price which they knew was polluted with heavy metals. Defendants seek dismissal of both claims. The Court will address each in turn.

### 4.1 WDTPA

The purpose of the WDTPA "is to deter sellers from making false and misleading representations in order to protect the public." *Novell v. Migliaccio*, 749 N.W.2d 544, 550 (Wis. 2008). Toward that end, Section 100.18

---

more importantly, Plaintiff provides no expert scientific evidence to support her belief stated in the parenthetical that "in all likelihood" the tested dogs became sick because of "the astronomical levels of heavy metals" in the food. Such an assertion cannot be based simply on her say-so.

[5]Plaintiff's complaint also accuses Defendants of employing similar deception with respect to their Acana brand dog food. *See generally* (Docket #1). However, Plaintiff admitted in her deposition that she never purchased Acana. The parties do not discuss Acana in their summary judgment submissions, and so the Court will treat the allegations regarding Acana as withdrawn.

prohibits the use of marketing statements for products or services which "contain[] any assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1). A cause of action pursuant to Section 100.18 requires proof of three elements: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Novell*, 749 N.W.2d at 553.

Defendants offer a number of arguments for dismissal of specific aspects of Plaintiff's WDTPA claim. These include that Plaintiff may not have read certain statements on Orijen's packaging, (Docket #34 at 15–17), that other statements she did read are non-actionable opinions rather than assertions of fact, *id.* at 17–21, and that none of the statements are rendered misleading by the mere presence of heavy metals in the food, *id.* The Court need not address these arguments because Plaintiff's claim fails for lack of evidence as to her most salient allegation—that the heavy metal levels in Orijen make the food harmful or otherwise of poor quality.

Careful consideration of the precise nature Plaintiff's claim, the Court's statements in the Dismissal Order, and the evidence presented at this stage, leads to this result. As presented in the complaint, the logic of the WDTPA claim is as follows. Defendants advertise Orijen as being of high quality and, accordingly, charge a premium price for the product. Plaintiff relied on these representations when she made her purchases. However, the products were, in fact, of low quality because they are "contaminated with *excessive* quantities of heavy metals[.]" (Docket #1 at 4) (emphasis added). Indeed, she claims that the concentrations of such metals in Orijen are "dangerous," in that they can cause harm to dogs and are higher than

that found in human food. *Id.* at 4–5. Thus, Defendants' statements of quality are misleading, and Plaintiff would not have bought Orijen had she known this. *Id.* at 5, 8.

In their motion to dismiss, filed more than eight months ago, Defendants advanced a number of arguments to defeat this claim. First, they asserted that the claim failed for lack of evidence that the dog food was harmful. Specifically, the heavy metal concentrations found in Orijen were disclosed by Defendants themselves in a white paper (the "White Paper"). (Docket #19 at 4). With reference to the MTA's MTL analysis, the White Paper argued that the heavy metal concentrations were well below harmful levels. *Id.* at 4, 6. Defendants believed that to survive their motion to dismiss, Plaintiff was required to adduce evidence which contradicted the White Paper. *Id.* at 6. The Court disagreed:

> The point of Plaintiff's lawsuit is to disagree with the conclusions reached by the White Paper, while nonetheless relying on its factual representations regarding heavy metal levels in Defendants' products. What Defendants need to counter Plaintiff's allegations is additional evidence on what constitutes "safe" concentrations of heavy metals in dog food and what is meant by "fit for human consumption." That, of course, is not the proper subject of a motion to dismiss.
> 
> . . .
> 
> Defendants emphasize that Plaintiff "cannot have it both ways with the White Paper. Plaintiff cannot on the one hand utilize the White Paper for the alleged levels of heavy metals in Champion's dog food while on the other also ignore the MTLs utilized in the White Paper." (Docket #17 at 5). To the contrary, Plaintiff may use Defendants' data while simultaneously disagreeing with their analysis thereof. This is particularly true because Defendants concede that there are no FDA regulations for the subject heavy metals in dog food. *Id.* Certainly, at the appropriate stage, Plaintiff will be called upon to produce evidence of what is considered safe for dog

food. Defendants will be free to submit contrary evidence. The trier of fact will decide who is right.

*Id.* at 6–7.

Second, and in a similar vein, Defendants argued that Plaintiff's allegations did not meet the requisite level of plausibility to state a claim for relief. Defendants suggested that Plaintiff was obligated to define what she believed was an "excessive" or "dangerous" level of heavy metals, namely by reference to scientific studies. *Id.* at 9. The Court found such allegations unnecessary. Plaintiff adequately pleaded that the products contained excessive heavy metals and that Defendants' deception caused her to buy them. *Id.* at 10. Plaintiff was also not required to plead that she or her pet were physically harmed by the contaminated food. *Id.* Instead, the thrust of her complaint is "about paying too much for what she maintains was a low-quality product." *Id.*

As with their motion to dismiss, Defendants rest their instant motion on factual contentions. Now that they have submitted a motion for summary judgment, their arguments are appropriate and the Court can address issues of fact. Defendants offer Poppenga's expert opinion to establish that their products are not made unsafe by the presence of heavy metals. In particular, he opines that the MTLs "are the best and most widely used scientific guidance available to veterinary toxicology and nutrition experts for determining what are safe levels of heavy metals in dog food." (Docket #36-6 at 6–7). Poppenga further notes that Orijen's heavy metal concentrations "are present at a safe level" because they are "well below the respective MTLs." *Id.* at 9.

Plaintiff offers no contrary expert opinions.[6] Instead, she makes two arguments seeking to undermine Poppenga's opinions, but neither has merit. First, Plaintiff contends that the MTLs are not as useful as Poppenga believes. She claims that the MTA is outdated and that it contains statements suggesting that the MTLs should be used with caution. Whatever Plaintiff's personal beliefs about the merit of utilizing the MTLs as Poppenga has done, her lay views cannot contradict the opinion of an expert in veterinary toxicology.

Second, Plaintiff notes that the heavy metal levels in Orijen are higher than those in the chicken, turkey, and eggs tested in the TDS. This observation is both true and irrelevant. Poppenga notes that the TDS merely provides the heavy metal concentrations in various store-bought foods. It does not say whether those concentrations are safe, unsafe, or otherwise provide a scientific assessment of the data. It is, as the Court earlier observed in the Dismissal Order, merely a reference chart. (Docket #19 at 8).

Plaintiff thus lacks any affirmative proof that Orijen contains concentrations of heavy metals which "are excessive, dangerous, and render [Defendants'] representations regarding the Products, including the packaging of the Products, false and misleading." (Docket #1 at 4). Whereas this was not an issue at the pleadings stage, in the context of summary judgment, she was required to adduce evidence sufficient for a reasonable trier of fact to agree with her claim as alleged. While it is undisputed that Orijen contains heavy metals, Plaintiff has failed to create a genuine dispute

---

[6]Calder's opinion is of no help here, as it assumes that Orijen is excessively contaminated with harmful heavy metals. Calder offers nothing to support that assumption, which is unsurprising, as his expertise is in marketing, not toxicology.

as to whether the heavy metal concentrations therein are excessive or dangerous. The Court has no idea whether she was unable to locate an expert to offer such an opinion, or if she simply chose not to expend the resources to secure expert testimony on the subject. Either way, she has not established the essential basis of the claim she pleaded.

Critically, the Court may only consider the claim *as pleaded*. In response to Defendants' motion, Plaintiff expended little effort buttressing her allegations of excessive heavy metal levels. Instead, she shifted her focus to other quality concerns, such as the inclusion of plastic, hair, bone, and other contaminants in Defendants' products, as well as the far-flung and potentially unsanitary sources for their ingredients. Her complaint contains not a whisper about such allegations, however, and she cannot make such a drastic change to the factual basis of her claim in response to a motion for summary judgment. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). Neither does Plaintiff plead a simpler form of her claim: that Orijen is misleadingly advertised as healthy because of mere presence of *any* heavy metals. She decided to plead a rather particular claim—that the packaging is deceptive because of *excessive* and *dangerous* heavy metals—and failed to prove it. At no time did Plaintiff seek leave to amend her complaint to adopt either or both of these theories, and the Court will not grant such relief *sua sponte*.[7]

---

[7] Plaintiff likely did not plead the latter theory because it is absurd. If a WDTPA claim would lie whenever a product is marketed as healthful, but nevertheless contains naturally occurring heavy metals at levels not shown to be harmful, then in light of the data in the TDS, consumers would have grounds to sue the manufacturer of nearly every product in a typical grocery store. True, Plaintiff need not show actual injury to herself or her pets. But she must at least offer some evidence of *potential* harm to establish a form of genuine deception on Defendants' part. Otherwise, every manufacturer would be required to disclose

On the undisputed evidence presented, Plaintiff has not raised a triable issue as to the second element of her WDTPA claim—that Defendants' representations were "untrue, deceptive or misleading[.]" *Novell*, 749 N.W.2d at 553. More precisely, she has not adduced evidence sufficient for a reasonable jury to agree with her theory of the case. Again, the Court offers no opinion as to whether such evidence could be obtained, or whether a differently pleaded theory might have survived Defendants' motion. Nevertheless, as it stands, the WDTPA claim must be dismissed.

### 4.2    Unjust Enrichment

To establish unjust enrichment, a plaintiff must prove three things: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 904 N.W.2d 789, 798 (Wis. 2017). Two district courts applying Wisconsin law have held that the benefit in question must be conferred *directly* to the defendant and not, for instance, a third-party retailer. *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1055–56 (W.D. Wis. 2018); *Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911, 936–37 (E.D. Wis. 2017).

Plaintiff makes no attempt to distinguish these cases. She merely states in a conclusory fashion that Defendants benefitted from her purchase of Orijen. (Docket #47 at 22–23). While that may be factually correct, it is not a reasoned basis to ignore the opinions cited by Defendant. The Court agrees with the other district courts and holds that *Sands* means what it

---

that their products contain heavy metals or be barred from making any assertion of quality about the products.

says; the benefit conferred must be from the plaintiff to the defendant. The Court will not expand on that definition where Plaintiff refuses to make even a minimal effort to supply contrary authority.

Plaintiff's unjust enrichment claim thus fails for two independent reasons. First, in accordance with the Court's analysis of the WDTPA claim, Plaintiff has failed to raise a genuine dispute of fact as to whether the heavy metals in Defendants' products render their marketing statements misleading. Plaintiff thus cannot establish the inequity required by the third element of her unjust enrichment claim. Second, it is undisputed that Plaintiff bought Orijen in various pet supply stores, not from Defendants directly. Consequently, the first element is also left wanting. The unjust enrichment claim cannot go to the jury.

5. **CONCLUSION**

In light of the foregoing, Defendants' motion for summary judgment must be granted and this action will be dismissed with prejudice. Plaintiff's pending motion for class certification will be denied as moot. (Docket #39). The Court will also grant two of Plaintiff's motions to seal related to a settlement report and summary judgment submissions, respectively. (Docket #31 and #46). She filed an additional motion to seal regarding class certification materials, (Docket #38), but the parties have now stipulated that the motion is unnecessary, (Docket #58). The Court will therefore deny the motion to seal as moot.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #33) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Counts One and Five of Plaintiff's complaint be and the same are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Plaintiff's motions to seal (Docket #31 and #46) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to unseal documents filed in support of her motion for class certification (Docket #41) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to seal documents filed in support of her motion for class certification (Docket #38) be and the same is hereby **DENIED as moot**, and the Clerk of the Court is directed to unseal the attachments to Docket #40 and docket as unsealed Docket #39-1;

**IT IS FURTHER ORDERED** that Plaintiff's motion for class certification (Docket #39) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of February, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge