# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KELLIE LOEB,

        Plaintiff,

v.

CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP,

        Defendants.

Case No. 18-CV-494-JPS

**ORDER**

In this action, Plaintiff asserts that Defendants have intentionally deceived her and other Wisconsin consumers by touting their dog foods as superior while knowing that the products are contaminated with heavy metals. (Docket #1). This central theory animated each of Plaintiff's five causes of action. *Id.* Several of the claims were dismissed in the Court's order on Defendants' motion to dismiss. (Docket #19). The remaining claims were dismissed when the Court granted Defendants' motion for summary judgment. (Docket #59).

On February 26, 2019, Plaintiff moved to vacate the Court's judgment of dismissal pursuant to Federal Rule of Civil Procedure 59(e). (Docket #67). Rule 59(e) permits a party to ask for alteration or amendment of a judgment within twenty-eight days of the judgment's issuance. Fed. R. Civ. P. 59(e). Plaintiff's motion was timely filed—judgment was entered on February 6, 2019—and so the Court may consider its merits. Nevertheless, the standard Plaintiff must meet to have her motion granted is steep:

> A Rule 59(e) motion can be granted only where the movant clearly establishes: "(1) that the court committed a manifest error of law or fact, or (2) that newly discovered

> evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." *Id.* at 954 (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

*Barrington Music Prods., Inc. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019); *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) ("District courts need not grant Rule 59(e) motions to advance arguments or theories that could and should have been made *before* the district court rendered a judgment.") (emphasis added, quotation omitted).

Plaintiff's motion seeks only reversal of the summary judgment order and its resulting judgment. (Docket #67 at 2). She does not suggest any errors in the order on the motion to dismiss. The Court will, therefore, confine its analysis to the summary judgment order. In the interest of brevity, and because only that one order is at issue, the Court will assume familiarity with the summary judgment order for the purposes of the instant decision.

Plaintiff offers four reasons that the Court's summary judgment decision was wrong. None have merit. First, Plaintiff contends that the Court has misunderstood her fundamental theory of the case. Rather than marrying her assertion of contamination in the products directly with the heavy metal levels therein, Plaintiff states that she intended to use heavy metals as merely an example of the product's adulteration. With this perspective of the complaint in mind, Plaintiff contends that the Court should have considered her evidence regarding the disgusting additives and far-flung sources of the products' ingredients.

As the Court carefully explained in the summary judgment order, it disagrees with Plaintiff's position. Though Plaintiff's complaint asserts that many of Defendants' various advertising statements are false or misleading, their falsity is expressly and repeatedly tied to excessive heavy metal concentrations. *See generally* (Docket #1). Indeed, Plaintiff's own summation of her case is as follows:

> 1. Champion sells a variety of premium-priced dog foods throughout the United States. Its dry dog food products ("Products") are sold under the "Orijen" and "Acana" brand names. Champion's packaging prominently states that the Products are "Biologically Appropriate" and contain "fresh, regional ingredients." Champion's packaging further represents that Orijen "features FRESH, RAW or DEHYDRATED ingredients, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." Consumers pay a premium for what Champion advertises and labels as a premium product. A 25-pound bag of "Orijen Original Biologically Appropriate Dog Food" can cost $80 or more— up to four times the price of national brand competitors.
>
> 2. Contrary to Champion's representations regarding the Products, the Products contain excessive levels of harmful heavy metals, including arsenic, lead, cadmium, and mercury.
>
> 3. As a result of Champion's misrepresentations, Plaintiff and other putative Class members were harmed by paying for the advertised Products and receiving only an inferior and contaminated product.

*Id.* at 1–2. To the extent that Plaintiff's complaint *really* meant to pose a wide-ranging critique of Defendants' ingredient-sourcing for the products, she did her best to hide that theory in what might be charitably described as a haystack. In reality, as the Court previously stated, the complaint

"contains not a whisper about such allegations[.]" (Docket #59 at 12).[1] Thus, it was wholly appropriate for the Court to deem Plaintiff's sourcing evidence as inapposite to the claim she presented.

Plaintiff is correct that she "was not required to plead every conceivable fact proving that [Defendants'] representations were false and deceptive." (Docket #72 at 8). However, she freely chose to inextricably intertwine her allegations of misleading advertisements with the issue of heavy metals. She also refused to amend her complaint in the many months between the issue of the scheduling order and the filing of Defendants' summary judgment motion. The Court cannot save her from her own litigation strategy, however inadvisable it may appear.[2]

Second, Plaintiff maintains that even when her case is constrained to the heavy metal theory, her evidence was sufficient for a reasonable jury to find in her favor on the WDTPA claim. But her only "evidence" was pointing out that the MTLs, which helped form the basis of Poppenga's opinion, should be used with caution. This cannot contradict Poppenga's assertion that the MTLs are the best guidance available for determining safe heavy metal concentrations in dog food. Plaintiff's misgivings about the MTLs are not a substitute for an expert opinion that it was inappropriate

---

[1] Compare the same introductory allegations of the operative complaint to those of Plaintiff's proposed amended complaint. (Docket #67-1 at 2–3). The amended complaint demonstrates that Plaintiff could have clearly pleaded her case, but for unknown reasons chose not to do so.

[2] The Court found that Plaintiff chained her case, perhaps foolishly, to the mast of the U.S.S. Heavy Metals. Plaintiff failed to properly construct the vessel in her pleadings and maintain it through discovery. When the ship sank upon reaching the maelstrom of summary judgment, her case was doomed to go down with it.

for Poppenga to base his opinions on them. Without this evidence, Poppenga's opinions stand unrebutted, and no reasonable jury would be in a position to disagree with them.

Third, Plaintiff asserts that the Court was wrong to require that she confer a direct benefit upon Defendants in order to maintain her unjust enrichment claim. Plaintiff offers, however, only the arguments that she made in her summary judgment brief, or those which she should have made there. They do not convince the Court to change its decision.

Fourth, Plaintiff contends that the Court should not have treated the Acana allegations as withdrawn in light of the parties' failure to address them in their summary judgment submissions. While the Court continues to be perplexed by the parties', and especially Plaintiff's, conduct in that regard, it agrees that Plaintiff arguably has standing to pursue the Acana claim. *Carrol v. S.C. Johnsons & Son*, No. 17-CV-05828, 2018 WL 1695421, at *4 (N.D. Ill. Mar. 29, 2018). Defendants have not meaningfully responded to Plaintiff's arguments for reinstatement of the Acana allegations. The Court will, therefore, reverse its decision and reinstate the Acana allegations. This does nothing to change the result of the case and will not require the Court to vacate its judgment.

Finally, Plaintiff asks that if the Court declines to reverse its dismissal of the case on summary judgment, it should nevertheless vacate the judgment to allow Plaintiff to file an amended complaint. The amended complaint includes additional allegations directly addressing the sourcing issues which were not mentioned in the original complaint. *Compare* (Docket #1) *with* (Docket #67-1). The Court will deny Plaintiff leave to amend on the basis of her undue delay in requesting such relief and

prejudice to both Defendants and the Court. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & N.W. Ind.*, 786 F.3d 510, 521–22 (7th Cir. 2015).

As noted above, Plaintiff had months to correct her complaint to conform with the theory she desired to present on summary judgment, which was the theory she was carefully developing through the discovery process. Though Plaintiff laments that she "was unaware that the Court's interpretation of her claims was fundamentally different and significantly narrower than her view of what is alleged in the Complaint," the Court finds this disingenuous. She could read her own complaint and see that it was totally silent on the sourcing issues she raised in her summary judgment materials. Further, she had the benefit of the Court's order on the motion to dismiss, as well as Defendants' own interpretation of the complaint as discussed in its summary judgment brief.

In seeking amendment not only after a summary judgment motion had been filed, but after it had been decided against her, Plaintiff presents the very picture of undue delay. The recent *Liebhart* case is instructive. There, the Seventh Circuit affirmed the district court's denial of leave to amend based on the plaintiffs' undue delay. *Liebhart v. SPX Corp.*, 917 F.3d 952, 965–66 (7th Cir. 2019). The plaintiffs had learned of the factual basis for their new allegations months before filling their motion for leave to amend. *Id.* In the interim, summary judgment motions had been filed and the district court was working to decide them. *Id.* Here, not only did Plaintiff discover the sourcing issues in discovery months prior to seeking leave, her motion for leave came after Defendants' dispositive motion had already been granted.

Even taking Plaintiff at her word that her delay was not intentional, it was surely negligent to leave her pleading in such a precarious state. Why

prejudice to both Defendants and the Court. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & N.W. Ind.*, 786 F.3d 510, 521–22 (7th Cir. 2015).

As noted above, Plaintiff had months to correct her complaint to conform with the theory she desired to present on summary judgment, which was the theory she was carefully developing through the discovery process. Though Plaintiff laments that she "was unaware that the Court's interpretation of her claims was fundamentally different and significantly narrower than her view of what is alleged in the Complaint," the Court finds this disingenuous. She could read her own complaint and see that it was totally silent on the sourcing issues she raised in her summary judgment materials. Further, she had the benefit of the Court's order on the motion to dismiss, as well as Defendants' own interpretation of the complaint as discussed in its summary judgment brief.

In seeking amendment not only after a summary judgment motion had been filed, but after it had been decided against her, Plaintiff presents the very picture of undue delay. The recent *Liebhart* case is instructive. There, the Seventh Circuit affirmed the district court's denial of leave to amend based on the plaintiffs' undue delay. *Liebhart v. SPX Corp.*, 917 F.3d 952, 965–66 (7th Cir. 2019). The plaintiffs had learned of the factual basis for their new allegations months before filling their motion for leave to amend. *Id.* In the interim, summary judgment motions had been filed and the district court was working to decide them. *Id.* Here, not only did Plaintiff discover the sourcing issues in discovery months prior to seeking leave, her motion for leave came after Defendants' dispositive motion had already been granted.

Even taking Plaintiff at her word that her delay was not intentional, it was surely negligent to leave her pleading in such a precarious state. Why

allow the sourcing issues to be at best vaguely implicated in her complaint? Why not offer the proposed amended complaint months ago to avoid the risk that the Court would interpret her complaint as it is currently pleaded? Plaintiff offers no worthwhile excuse for her idleness.

This leads to the matter of prejudice. This District is short on judges and its case filings are ever-increasing. More importantly, the undersigned has a long-standing policy of completing cases expeditiously, so that every party gets its day in court, without intruding upon another's day in court. That is precisely what Plaintiff proposes to do here. She was on notice that she needed to give this case an appropriate level of attention, and yet chose to ignore the state of her pleadings not until the last minute, but indeed after the last minute had already passed. Her inexcusable delay prejudices Defendants, the Court, and the other litigants seeking access to the court. Put bluntly, the Court does not have the time or resources to shepherd parties, particularly represented parties, through each stage of the litigation process towards trial. Plaintiff had her chance keep her case on a track towards trial, and has no one but herself to blame that it was derailed.

In light of the foregoing, the Court will deny Plaintiff's motion to vacate its judgment of February 6, 2019. The Court will, however, separately grant her relief in the form of reinstatement of the Acana allegations, overturning its decision on that issue in the summary judgment order. (Docket #59 at 7 n.5). This relief has no effect on the judgment itself.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to vacate the Court's judgment of dismissal (Docket #67) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's allegations regarding the Acana products are reinstated in accordance with the terms of this Order, and the Court's decision dismissing those allegations (Docket #59 at 7 n.5) is hereby **VACATED**.

Dated at Milwaukee, Wisconsin, this 5th day of September, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge